**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DERWIN LEMBRICK,

    Petitioner,

v.                                               Case No. 3:16-cv-47-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

    Respondents.

---

## ORDER

### I. Status

Petitioner, Derwin Lembrick, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) on January 13, 2016.[1] Lembrick challenges a 2010 state court (Duval County, Florida) judgment of conviction for first degree murder for which he is currently serving a life term of incarceration. Doc. 1 at 1. Respondents filed a Response on September 29, 2017. See Doc. 19 (Resp.).[2] Lembrick filed a Reply. See Doc. 25. This case is ripe for review.

---

[1] Giving Lembrick the benefit of the mailbox rule, the Court finds that his pleadings were filed on the respective dates Lembrick handed them to prison authorities for mailing to the Court. See Houston v. Lack, 487 U.S. 266, 276 (1988).

[2] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

## II. Governing Legal Principals

### A. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "''opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

4

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

5

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

## III. Analysis

### A. Ground One

Lembrick asserts that his trial counsel was ineffective for failing to file a motion in limine seeking admission of the complete versions of Lembrick's jail phone calls. Doc. 1 at 5-6. According to Lembrick, only inculpatory portions of the recordings were presented at trial, and the compete conversations were necessary to show that Lembrick was actually explaining that all witnesses needed to testify truthfully. Id. at 6. Lembrick avers that the portions of the recordings played for the jury misled it to believe that Lembrick was attempting to tamper with the state witnesses.

Lembrick acknowledges that he did not raise this claim in state court, and thus, admits it is unexhausted and procedurally defaulted. Doc. 1 at 6-7. However, Lembrick argues that the Court should excuse this procedural bar because he was not represented by postconviction counsel during his state postconviction proceedings. See Doc. 1 at 7 (citing Martinez v. Ryan, 566 U.S. 1 (2012)). To overcome a procedural default under Martinez, Lembrick must show that his "underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that [he] must demonstrate that [his] claim has some merit." Martinez, 566 U.S. at 14. Conversely,

6

his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." Id. at 16.

The evidence at issue here involves seven jailhouse phone recordings that were admitted during Detective Hinton's trial testimony as state exhibits 62, 63, 64, 65, 66, 67, and 68. Resp. Ex. B at 433. The exhibits were relevant excerpts of the full version of these recordings. Lembrick's trial counsel reviewed the exhibits and stipulated to the excerpts prior to their admittance at trial. Resp. Ex. B at 398-99, 434. During these recordings, Lembrick attempts to influence witnesses' testimony, making statements like "[t]ell him I need for that dude to come and just say something totally different" or "tell them you were at the store, tell that . . . to say something way different, you know what I mean?" Resp. Ex. B at 435-36, 442, 445-46, 448. In one excerpt, Lembrick was heard giving someone the phone number of an unidentified woman and then said, "tell her ease up" and "you know what I'm saying, something different." Resp. Ex. B at 450. Detective Hinton testified that the phone number referred to in that specific excerpt belonged to Ms. Cherrill Wilson. Resp. Ex. B at 452.

Initially, the Court finds that Lembrick's arguments are ambiguous and "wholly without factual support." Notably, Lembrick fails to provide the Court with any evidence that the complete version of these subject recordings actually contain any exculpatory statement. Instead, Lembrick requests that the Court accept his assertions as true and disregard the record evidence showing otherwise.

Further, the only specific statement that Lembrick claims was improperly omitted from the jail recordings is "that he wanted all prospective witnesses at his

7

upcoming trial to tell the truth." Reply at 4. However, during trial, Lembrick testified in his own defense. Resp. Ex. B at 468-75. On cross-examination, Lembrick acknowledged that he made the subject phone calls and confirmed that his voice is heard on the recordings. Id. at 483-84. Lembrick also admitted that in making those phone calls, he was requesting that his friends contact Ms. Wilson or Mr. Kinte Getzen, but asserts that the intent behind his request was merely to inform these witnesses to "[t]ell the truth basically." Resp. Ex. B at 486. On re-direct examination, Lembrick again testified that he was making these jail calls because he wanted these witnesses to tell the truth. Resp. Ex. B at 519-20. As such, Lembrick, through his own trial testimony, elicited the single statement that he now claims counsel failed to adequately produce.

The Court also finds that Lembrick's claim is "without merit." Ms. Wilson was an eyewitness to the murder. Resp. Ex. B at 274-86. At trial, Ms. Wilson testified that she saw Lembrick drive up to the victim, get out of his vehicle, and engage in a verbal altercation. Id. at 278-79. She stated that Lembrick began shooting the victim, so she dropped to the ground behind a white SUV. Id. The victim then fell to the ground a few feet away. Id. Ms. Wilson explained that she laid on the ground until Lembrick fled the scene, and then she immediately ran to her aunt's house and asked her to call the police. Id. at 279-81. Once police arrived, Ms. Wilson denied witnessing the murder and declined to offer any helpful information. Resp. Ex. B at 285. A few days later, however, police re-interviewed Ms. Wilson and advised her that her fingerprints were found on the white SUV next to where the victim's body was located. Id. at 184, 286.

Confronted with this physical evidence, Ms. Wilson told police what happened. Id. at 286. Police presented Ms. Wilson with a photospread and she identified Lembrick as the individual who pulled the trigger. Id. at 286-88. Ms. Wilson testified that after Lembrick's arrest, she went to visit him in jail because she thought they were friends. Id. at 289. However, Ms. Wilson explained that she later received threats, which dissolved any loyalty she felt toward Lembrick. Id.

Mr. Getzen also witnessed Lembrick commit the murder. Resp. Ex. B at 370-74. Mr. Getzen told police that he was in his house and peeking through his window blinds, when he saw Lembrick shoot the victim. Resp. Ex. B at 371. Mr. Getzen also identified Lembrick during a police photospread. Id. at 372. Following Lembrick's arrest, Lembrick's girlfriend came to see Mr. Getzen and coerced him into giving police a written statement explaining he did not witness any crime. Id. at 373-74. He testified that he made the written statement because he was scared. Id. at 374.

Even if all seven of these jail call recordings were entirely omitted from trial, the jury would have still heard eyewitness testimony from Ms. Wilson and Mr. Getzen that they saw Lembrick murder the victim. The jury would also still consider these witnesses' statements that they were, in some fashion, threatened or coerced because they witnessed the murder. Accordingly, Lembrick cannot demonstrate that but for counsel's alleged error, the outcome of trial would have been different. Whether Ms. Wilson or Mr. Getzen were lying during their trial testimony was a question of credibility for the jury to determine, and Lembrick's alleged statement that he wanted these witnesses tell the truth would not have impacted the jury's decision. As such,

9

Lembrick cannot overcome his failure to exhaust this issue or the resulting procedural default. He also has failed to identify any fact that would warrant the application of the fundamental miscarriage of justice exception. Ground One is denied.

**B. Ground Two**

Lembrick maintains that trial counsel was deficient for advising Lembrick to testify at trial. Doc. 1 at 8. In support of this assertion, Lembrick contends that trial counsel's error prejudiced him because Lembrick: (1) was unable to recall pertinent information during cross-examination; (2) he admitted to having access to a cellular telephone that was used as material evidence against him; and (3) he admitted to making jail phone calls to state witnesses and requesting that they testify to something different. Id.

Lembrick again admits that this claim is unexhausted and now procedurally defaulted. Doc. 1 at 9; Reply at 9-14. He requests that the Court excuse this procedural bar because he was denied collateral counsel. Doc. 1 at 9; Reply at 9-14 (citing Martinez, 566 U.S. at 14).

Initially, the Court notes that prior to Lembrick's trial testimony, the trial court conducted a colloquy with Lembrick, during which Lembrick made the following statements under oath:

> THE COURT: You can put your hand down. Mr. Lembrick, the only reason that I'm asking these questions is the law suggests I should, just so long as you know that you have these rights and I'm going to talk about them in a second. This reason is this is one of those decision, one of the few decisions during

a criminal trial that's yours and yours alone. Your attorney has indicated that it's your desire to take the witness stand and testify in your defense; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And, Mr. Lembrick, do you understand that during the course of this trial you have the absolute right to remain silent and not to testify if you so choose? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that if you chose to exercise your right to remain silent, I would have instructed the jury that, as I did in the opening statements, that no juror should ever be concerned about the fact that you chose to remain silent and did not testify in your own defense, and not only that, that they couldn't consider that in determining their verdict? You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you feel like you've had sufficient amount of time to discuss this decision to testify with you attorney; correct?

THE DEFENDANT: Yes, sir.

THE COURT: And it is your - - after discussion with your attorney, it is your independent decision that you choose to testify; correct?

THE DEFENDANT: Yes, sir.

Resp. Ex. B at 465-67. Lembrick's prior sworn statements undermine his current allegations. This record evidence shows that Lembrick voluntarily and knowingly made the decision to testify on his own behalf; thus, this claim is without "factual support."

Nevertheless, even assuming trial counsel influenced Lembrick's decision to testify, Lembrick cannot demonstrate prejudice from this purported error. Along with the eyewitness testimony from Ms. Wilson and Mr. Getzen discussed in Ground One, the state presented testimony from Detective Tracy Stapp that she responded to the crime scene and found six .45 caliber shell casings around the victim's body. Resp. Ex. B at 192. An expert in firearms identification testified that all six casings were fired from the same gun. Id. at 388-93. Ivan Skipper, a long-time friend of Lembrick's, testified that he was outside smoking when he saw Lembrick drive into the neighborhood, park, and get out of the vehicle with a .45 semiautomatic gun. Id. at 239-51. Mr. Skipper testified that Lembrick "cocked the gun" and walked towards the victim, prompting Mr. Skipper to run away. Id. at 248-49. As he was running away, Mr. Skipper heard six or seven gunshots. Id.

Detective Hinton, the lead Detective on the case, testified about Lembrick's cell phone records. Id. at 420-21. Detective Hinton explained that two calls were placed from Lemrick's cell phone at 8:59 p.m. and 9:14 p.m. on the night of the murder. Id. at 424-25. He stated the first 911 call was made a 9:30 p.m. Id. Lembrick then took a third phone call at 9:45 p.m. Id. Detective Hinton stated that the cell tower that was

used to complete all of these calls was located where the shooting took place. Id. at 423-24.

Considering this substantial evidence of guilt, Lembrick cannot show that but for his trial testimony, the outcome of the trial would have been different. Two eyewitnesses testified that they witnessed Lembrick murder the victim, and another bystander corroborated evidence that Lembrick was present when the victim was killed. Further, the cell tower data provides physical support that Lembrick was in the location where the murder occurred. As such, absent counsel's supposed error in advising Lembrick to testify, and assuming Lembrick maintained his right to remain silent, Lembrick has failed to demonstrate the necessary prejudice under Strickland. Because this claim is "without merit," Lembrick cannot overcome this procedural default. He also has failed to identify any fact that would warrant the application of the fundamental miscarriage of justice exception. Ground Two is denied.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Lembrick appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions

report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of November, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: Derwin Lembrick, #132547
Anne Catherine Conley, Esq.

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.